UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN T. ERVIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16CV01337 ERW |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Jonathan T. Ervin's Petition under 28 U.S.C.

§ 2254 for Writ of *Habeas Corpus* by a Person in State Custody [ECF No. 1].

## I.    BACKGROUND

On January 27, 2012, Petitioner Jonathan T. Ervin ("Petitioner") was convicted by a jury

of statutory sodomy in the first degree in New Madrid County, Missouri. He was sentenced to

thirty years imprisonment. His conviction was affirmed by the Missouri Court of Appeals,

Southern District of Missouri. Petitioner filed a timely motion for postconviction relief pursuant

to Missouri Supreme Court Rule 29.15. After an evidentiary hearing, his motion was denied.

This judgment was affirmed on appeal.

The Missouri Court of Appeals for the Southern District of Missouri described the facts

of Petitioner's conviction as follows:

> On June 4, 2010, [Petitioner] was living at his grandfather Lawrence's home.
> [Petitioner's] step-brothers, Terry and Joshua (Victim), were dropped off by their
> mother so Lawrence and [Petitioner] could watch the two boys while she was at
> school. Terry was approximately five years old, and Victim was twenty-one
> months old.

Lawrence and Terry went out to a shed behind the house to do some work, leaving [Petitioner] and Victim alone in the house. When Terry came back inside, Victim and [Petitioner] were alone in the kitchen. Victim was not wearing a diaper and had blood running down his leg. [Petitioner] was not wearing a shirt and warned Terry not to tell anyone about what he saw.

Victim's mother called to check in before she came to pick up Victim and Terry. When Terry answered the phone, she could hear Victim screaming in the background. She asked to speak to [Petitioner], and he told her Victim was being fussy. When she arrived, Victim grabbed his diaper bag and "acted like he just wanted to get out of there." Victim's mother had changed Victim's diaper right before she dropped him off at Lawrence's home and had not noticed anything unusual. She asked [Petitioner] how Victim had behaved. [Petitioner] said that Victim had "pooped all over him."

Victim was still being fussy as they were leaving Lawrence's house, and his mother had to "push him down" to get him buckled into his car seat. When they arrived at her house, she noticed blood on Victim's foot. Victim's father left Victim's mother a voicemail that [Petitioner] had called to tell him that Victim had a bump on his bottom that they might want to have checked out. When Victim's mother checked Victim's diaper, Victim "had stuff dangling from his bottom. It looked like he had been ripped from the inside out and he had blood all over his diaper." She took Victim to the emergency room and Victim was transferred to Cardinal Glennon Children's Hospital in St. Louis for treatment.

Victim had bruising and swelling – signs of a traumatic injury – around his rectal area. An endoscopy revealed mucosal fissure sin the lining of Victim's anus. Dr. Timothy Kutz, a specialist in child abuse and maltreatment, examined Victim at Cardinal Glennon. Dr. Kutz concluded that Victim's "extensive injuries were consistent with or indicative of penetrating anal trauma."

[Petitioner] was interviewed by Detective Brandin Caid (Detective Caid), an investigator with the sheriff's department. After [Petitioner] was read his *Miranda* rights, Detective Caid questioned [Petitioner] about his interaction with Victim at Lawrence's house that day. Detective Caid explained Victim's injuries to [Petitioner], and he initially answered Detective Caid's questions. [Petitioner] did not respond when asked if he knew how Victim had been injured. Detective Caid repeated, "Do you have any idea at all?" [Petitioner] then responded, "That's what this whole thing is about?" Detective Caid again explained that they were trying to figure out how Victim was injured. After a pause, [Petitioner] said he did not want to talk anymore. The interview ended.

*State v. Ervin*, 398 S.W.3d 95, 98-100 (Mo. Ct. App. 2013). A video of Petitioner's interview

with law enforcement was introduced at trial. Petitioner challenged the introduction of this video

on direct appeal, and his conviction was affirmed. Petitioner now challenges the trial court's decision to admit the interview into evidence and his counsel's failure to question his father and stepbrother about his father's practice of physically disciplining his children.

## II.  STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal quotation omitted). An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id*.

## III.  DISCUSSION

Petitioner asserts two grounds for relief in his petition. First, he argues he was denied his rights to due process, to remain silent, to be free from self-incrimination and a fair trial under the Fifth and Fourteenth Amendments of the United States Constitution because the trial court overruled his objection and admitted portions of Petitioner's videotaped interview with law enforcement. Second, Petitioner argues he was denied his rights to effective assistance of counsel, due process, right to present a defense and a fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution when his trial counsel failed to question his father and stepbrother about his father's physical discipline of his children. Respondent asserts Petitioner's claims were previously denied by the Missouri Court of Appeals on direct appeal and in post-conviction proceedings and the Missouri Court of Appeals did not contradict or unreasonably apply clearly established federal law in denying Petitioner's claims. The Court will address each claim as follows.

      *a.*      *Trial Court Error*

Petitioner asserts the trial court made an error when it admitted evidence of Petitioner's interview with law enforcement. Petitioner states his trial counsel filed a motion in limine to prohibit introduction of the portion of the interview where he remains silent after being asked "how he thought these injuries occurred?" and his invocation of his right to remain silent. At trial, his counsel objected to the introduction of this evidence, and the objection was overruled by the trial court. The Missouri appellate court affirmed the trial court's denial of post-conviction relief on this exact issue.

The Missouri appellate court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. The United States Supreme Court has made it clear a defendant's silence cannot be used against him. *See Doyle v. Ohio*, 426 U.S.

4

610, 618 (1976) ("While it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings."); *see also Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986). A defendant's right to remain silent includes a statement of a desire to remain silent. *Wainwright*, 474 U.S. at 295, n.13. A defendant's invocation of his *Miranda* rights must be treated as post-*Miranda* warnings silence and cannot be used against him. *Fields v. Leaply*, 30 F.3d 986, 990 (8th Cir. 1994). It is also clear a defendant does not invoke his right to remain silent by remaining silent; he must unambiguously invoke his *Miranda* rights. *Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010). However, federal case law is not clear on whether a defendant's assertion of his previously waived rights may be used as evidence against him.

In Missouri, if a defendant revokes the waiver of his right to remain silent, the state can show to the jury the circumstances which ended the interrogation. *State v. Frazier*, 927 S.W.2d 378, 379-380 (Mo. Ct. App. 1996) (internal citations omitted). Although, evidence which reveals the defendant unwilling to answer a direct charge of guilt is not admissible; similarly evidence a defendant "clammed up" to a question calling for an admission or denial is inadmissible. *Id*. In this case, the trial court, and Missouri appellate courts, found Petitioner was not answering a direct charge of guilt; therefore, the evidence could be admitted. Petitioner invoked his right to remain silent after being asked if he knew how the victim had been injured. It is clear the trial court did not err in admitting the evidence under Missouri law.

The Missouri appellate court's decision the trial court did not err in admitting the aforementioned evidence is not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the decision is entitled to deference and the Court will deny Petitioner's motion on this ground.

*b.      Ineffective Assistance of Counsel*

Next, Petitioner asserts his trial counsel was ineffective for failing to question his father and stepbrother about his father's practice of physically disciplining his children. Petitioner argues such questioning would have given him a defense as to how the victim was injured.

At the post-conviction evidentiary hearing, Petitioner testified his father could have disciplined the victim and "just got carried away," because when he was young, his father "used to whoop us with anything he could grab, a belt, a board, anything he could pick up." Petitioner's trial counsel testified he believed raising this issue at trial "would have been problematic" and "inconsistent with not only the medical evidence, but some physical evidence."

The Missouri appellate court applied the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984) to Petitioner's claim and found his trial counsel acted reasonably because this defense theory would have been "overwhelmingly contradicted" by the medical and physical evidence presented at trial. The appellate court held the evidence showed the victim could not have sustained the injuries through spanking. Additionally, the appellate court found there was no prejudice to Petitioner because the evidence against him was overwhelming.

To establish a claim for ineffective assistance of counsel, a defendant must show the counsel's performance was deficient and counsel's deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. Prejudice requires the defendant to show he was deprived of a fair trial because of the deficiency. *Id*. Under the first prong, the measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. To establish the second prong of prejudice,

the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Missouri appellate court's decision Petitioner's trial counsel was not ineffective is a reasonable application of federal law. The appellate court correctly applied the *Strickland* standard. Attorney trial strategy is virtually unchallengeable. *Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *see also Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) ("recognizing a court's obligation under *Strickland* to refrain from second-guessing trial counsel's strategic decisions.). Therefore, the appellate court's decision is entitled to deference and the Court will deny Petitioner's motion on this ground.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Petitioner Jonathan T. Ervin's Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [ECF No. 1] is **DENIED**.

So ordered this 18th day of January, 2017.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**